Mr. Justice Cox
delivered the opinion of the court. After stating the case he proceeded as follows :
The case presents some interesting questions connected with the law of easements. It is admitted on both sides that while Acker owned both houses, no easement in the proper sense could exist in behalf of one house against the other, because the very definition of an easement is “an accomodation which one man hath in the lands of another.” It supposes a separate ownership of the dominant and servient tenements. If an easement existed in this case at all, it arose in the very act of severance of ownership and conveyance of one house to Huyck. The deed of conveyance transfers the land “with the appurtenances.”
This easement must have been made an appurtenance, if at all, either by express grant or by implication. It is not claimed through any express grant; it must then have arisen through implication, if at all. That is, the sale must have been made under such circumstances that it was implied therefrom that this easement should pass.
The subject of easements by implication is a large one, *157 and has been much discussed in decisions and text-books. The authorities are exhaustively considered in Washburn on Easements, page 60, and so on ; and the result of the decisions is the rule invoked by the complainant in this case, which is expressed as clearly, perhaps, as by any other authority, in the case of Lampman vs. Milks, 21 New York Reports, page 505, in the following language:
“ The principle is that where the owner of two tenements sells one of them, or the owner of an entire estate sells a portion, the purchaser takes the tenement or portion sold with all the benefits and burdens which appear at the time of sale to belong to it as between it and the property which the vendor retains. This is one of the recognized modes by which an easement or servitude is granted. No easement exists so long as there is a unity of ownership, because the owner of the whole may at any time rearrange the qualities of the several parts. * * * The parties are presumed to contract in reference to the condition of the property at the time of sale, and neither has a right of altering the arrangement then openly existing to change materially the relative value of the respective parts.”
Some authorities allude vaguely to the necessity of the easement to the granted property as an element. But the rule into which the authorities seem to have drifted takes no account of this necessity, but relies entirely upon the appearances created by the act of the grantor. The rule does not appear to be essentially different from the law of estoppel. The grantor, by holding out certain appearances to the purchaser, induces the expectation on his part that with the land purchased he is to receive certain privileges ; and it would be inequitable to defeat that expectation by afterwards denying them. This is exactly the law of equitable estoppel.
The cases, however, are not harmonious. The law is denied entirely by Judge Hoar, in Randall vs. McLaughlin, 7 Allen’s Reports. Other authorities discriminate between what are called apparent and continuous on the one hand, and discontinuous easements on the other; the former being *158 those which are a constant and visible encroachment on the servient land, and the discontinuous easements being those which are only observable in their exercise, which is occasional, as a right of way over unenclosed land.
The application of the rule to ways is denied, in the case of Oliver vs. Hook, 47 Maryland Reports, 301, and other cases therein cited.
On the other hand, it is asserted in New York and Pennsylvania, and by Judge Story in The United States vs. Appleton, 1st Sumner, 500. A distinction is suggested in the case of Phillip vs. Phillip, 48 Pennsylvania, which may serve to reconcile these discrepancies. In that case the way was fenced in, and it may be well maintained that such a way is as apparent and continuous an easement as a drainpipe run over or under the land ; whereas a way having no visible boundaries may not be.
' If this distinction is just, the present ease comes clearly •within the general rule, because, as I have already stated, the way was bounded and marked by permanent enclosure, obvious to the most casual inspection.
But in what manner was this easement created, if at all ? Evidently by an act in pais, which consisted of such a location of the fences as to give the appearance of a permanent easement. It is conceded that if the fence had been restored to its original location before the sale, there would have been no easement in this alley. In this respect, this case resembles Coppy’s case, cited from the year books by Gail and Whatley, in their work on Easements. That was an action for stopping a gutter running from the building of the plaintiff over the adjoining building of the defendant, both buildings having first been owned by the same person, afterwards sold, one to the plaintiff, and the other to the defendant. The easement claimed was allowed ; but it was conceded that if the owner of both tenements, before selling either, had destroyed the gutter, and then sold, the gutter could not have been restored. And it would have made no difference in this case if, after closing the fence and then selling, the grantor had opened it again after sale under a *159 license to use the alley. Can it make any difference if, instead of actually moving the fence and closing up the entrance to the alley, the grantor informed the purchaser that he intended to close up the alley, but would allow him its temporary use ? Is not such a declaration itself an act in pais equally operative to detach the apparent easement from the grant, with the actual removal of the fence ? We think it is. There would be plainly no estoppel in such a case, but the grantee is enlightened as to the purposes of the grantor, and an appearance which might otherwise have misled him is, by parol explained away, so that it is no longer a delusive appearance ; and as the purchaser is compelled to prove by parol the existence of this appearance, so the defendant may show by parol that the appearance was explained away at the time of sale. *
We think, then, that the easement claimed did not pass by the grant to Iluyck. If so, no subsequent circumstances in the case could have entitled his grantee to it. If an estoppel did exist in behalf of Huyck, his grantee, as privy in estate, could have availed himself of it. But as no estoppel existed, none could arise in behalf of Mr. McPherson. The license to Huyck which was all that he had, was essentially a personal privilege, and not assignable ; and would not pass by a conveyance of the land in connection with which it was used, and it was revocable at pleasure. This is the law, irrespectively of any knowledge or notice, on the part of Mr. McPherson.
But we are satisfied besides, that he had knowledge sufficient to put him on inquiry, and affect him with notice of the real facts. As far, therefore, as relates to the right of way through this alley, we are of opinion that the court properly denied the relief.
The right to the underground drainage stands upon a different footing. The principal cases under this head relate to easements of that kind. Coppy’s ease as already stated, was that of a gutter draining one tenement through another. Another leading case is that of Nicholas vs. Chamberlain, Cro. James, 121, in which it was held, upon demurrer, that *160 “ if one erect a house and build a conduit thereto in another part of his land, and convey away by pipes to the house, and afterwards sell the house with the appurtenances accepting the land, or sell the land to another, reserving to himself the house, the conduit and pipes pass with the house, because it is necessarily and quasi appendant thereto.”
But the most important case is that of Pyer vs. Carter, which was decided in 1857, in the Exchequer Chamber, and afterwards affirmed in the House of Lords, reported in 1st H. & Norm., 916.
“ The owner of one house converted it into two. The one was conveyed to the defendant and afterwards the other to the plaintiff. At the time of the conveyance, a drain ran under the plaintiff’s house and then under the defendant’s house to a common sewer. The plaintiff’s house was drained through this drain, but he might have made a new one at a small expense. The court held that, under these circumstances, the plaintiff had an easement or drain through the defendant’s premises by an implied grant, and that the defendant was liable for stopping it.”
This case is a leading authority in England, and seems to be recognized by the weight of authority in this country.
The easement by drain-pipes was an apparent and continuous one, and falls clearly within the rule we have spoken of. The purchaser had the more reason for expecting it to continue in the fact that house No. 225 drained through pipes under the same alley, and no disturbance of the pipes from No. 228, by excavation or structures, could be made without destroying both. The difference in the facts between the drainage easement and the right of way is, that no notice was given by Acker of any intention to disturb the former. His conversation related entirely to the alley, which was a superficial right of way, and no allusion was made to the underground drainage, and nothing done to undeceive the purchaser as to his continued enjoyment of that easement.
The bill alleges and charges the defendant with intending to sink the foundations of the wails of his house into the *161 earth, so as to cut through and stop these drains. While the" defendant denies that his intended improvements will have that effect, he asserts the right, substantially, to make such improvements as his interest may require. As the right thus asserted might be exercised too speedily to allow an injunction, we are not disposed to find fault with the decree below which settled the question in advance and prevents further litigation.
We do not feel called upon however to decide anything as to the right of the owner of house No. 223, to enter on the other premises to repair the drain. We affirm the decree as to the right of way through the alley, and so much of it as enjoins disturbance of drain-pipes under the alley connected with complainant’s house, and interference with complainant’s use of the same.